## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| CHARLESTON ADVANCEMENT ACADEMY HIGH SCHOOL, | ) ) ) | |
| Plaintiff, | ) ) | No. 2:20-cv-01676-DCN |
| vs. | ) ) | **ORDER** |
| ACCELERATION ACADEMIES, LLC and ACCELERATION EDUCATION, INC., | ) ) ) | |
| Defendants. | ) ) ) | |

The following matter is before the court on defendant Acceleration Academies, LLC's ("Accel Academy") motions to dismiss, or, in the alternative, to transfer venue, or, in the alternative, to compel arbitration, ECF Nos. 4, 11, and plaintiff Charleston Advancement Academy's ("CAA") motion to remand and motion to stay Accel Academy's motion to dismiss, or, in the alternative, to transfer venue, or, in the alternative, to compel arbitration, ECF No. 9. For the reasons set forth below, the court denies CAA's motion to remand, finds as moot CAA's motion to stay, finds as moot Accel Academy's motion to dismiss, ECF No. 4, grants in part and denies in part Accel Academy's motion to dismiss, ECF No. 11, and grants Accel Academy's motion to transfer the case to the Western District of North Carolina to compel arbitration.

### I. BACKGROUND

CAA is a nonprofit corporation and a public charter school organized under the laws of the State of South Carolina, including the South Carolina Charter Schools Act of 1996, as amended (the "Act"), and the South Carolina Nonprofit Act of 1994, as amended (the "Nonprofit Act"). ECF No. 8 at 1. CAA submitted a charter application to

1

the South Carolina Public Charter School District ("SCPCSD") to serve as its sponsor, as defined in the Act.  ECF No. 8-1.  As part of its charter application, CAA stated it intended to contract with Accel Academy to serve as its charter management organization because of Accel Academy's "proven track record" of serving its target student demographic.  Id. at 71.  As part of its contract with CAA, the charter application stated that Accel Academy would provide administrative, management, and educational services as required by the Act.  Id. at 36, 41, 51

On or around May 20, 2017, the SCPCSD approved CAA's charter application. ECF No. 8-2 at 1.  On April 11, 2018, CAA and SCPCSD signed a contract, which incorporated the charter application, governing the responsibilities between the two parties in running the school, pursuant to the Act ("Charter").  Id.  One of the requirements of the Charter was that if CAA contracted with a charter management organization to provide the school services, that charter management organization must be approved by SCPCSD in advance, and that such a contract "must provide that termination be made in a manner that is least disruptive to students."  Id. at 7–8.  The Charter also mandated that any agreement between CAA and a charter management organization contain a termination clause that required no more than 180 days' notice "except where the health and safety of students is a concern."  Id. at 8.

On April 2, 2018, CAA and Accel Academy entered into an agreement for Accel Academy to serve as the charter management organization for CAA.  ECF No. 8-3.  The agreement between CAA and Accel Academy governed the obligations between the parties that were necessary for CAA to comply with the Charter.  ECF No. 8-3.  The agreement between CAA and Accel Academy contained a termination clause that

allowed termination with 180 days' notice by either party, or for immediate termination

at CAA's sole discretion "[i]n the event that a danger to student health, safety or welfare

exists." Id. at 6.  The agreement between CAA and Accel Academy required the

termination to be "in a manner that is least disruptive to students." Id. at 3.  The

agreement between CAA and Accel Academy contained an arbitration clause that stated,

in part:

> In the event of a dispute between the Parties[,] [CAA] and Accel[ ]
> Academ[y] agree to enter into negotiation to attempt to resolve any
> dispute . . . . If negotiations are unsuccessful, and upon the request of either
> Party, the Parties shall enter into alternative dispute resolution consisting of
> arbitration. . . . If an AAA filing site cannot be agreed upon, the filing site
> shall be Charlotte, North Carolina.

ECF No. 8-3 at 16.

CAA opened on July 1, 2018 and regularly paid invoices submitted to the school

by Accel Academy until September 2019.  ECF No. 8-11 at 2.  In September 2019, CAA

failed to pay Accel Academy's invoice until a dispute between the parties involving

Accel Academy's failure to secure funds on CAA's behalf and the auditing clause of the

agreement was resolved.  Id.  On October 23, 2019, Accel Academy triggered the 180-

day notification period to terminate the agreement with CAA.  On November 1, 2019, the

CAA board unilaterally determined that Accel Academy's management of the school

raised "public health and safety concerns" and immediately terminated the agreement

with Accel Academy.  Id.  On November 4, 2019, Accel Academy filed for arbitration in

Charlotte, North Carolina pursuant to the agreement between CAA and Accel Academy.

ECF No. 8-4.  On November 11, 2019, CAA submitted a charter amendment request

("Charter Amendment Request') to the SCPCSD which included removing Accel

Academy from the Charter.  ECF No. 8 at 7.

3

The SCPCSD Board found that CAA's unilateral termination of Accel Academy without a plan to replace the services of Accel Academy was a breach of the Charter. ECF No. 8-7 at 4. As a result of this breach, the SCPCSD Board sanctioned CAA. Id. at 8. These sanctions included ordering CAA to rescind all actions taken since November 14, 2019, to reinstitute Accel Academy as the charter management organization, and to maintain the "status quo" prior to the termination of Accel Academy. Id. In a letter sent to CAA on December 5, 2019, the SCPCSD explicitly told CAA the following regarding its Charter Amendment Request:

> Finally, I want to be exceedingly clear on this point. <u>There is no guarantee at all that the SCPCSD will approve the new plan that the CAA Board submits</u>. The SCPCSD Board has never approved the CAA Board to locally manage the school without a management organization, and it is the CAA Board's burden to prove to the SCPCSD Board that it should be entrusted to do so. Many questions remain about the program CAA's Board is proposing to implement. The SCPCSD Board will carefully consider that program prior to allowing an amendment to implement a program that might be materially different than what was originally approved.

Id. at 4–6 (emphasis added).

On January 6, 2020, the arbitrator for the parties ordered a preliminary injunction mandating that operations between CAA and Accel Academy remain "status quo ante as of October 23, 2019" and requiring that all services provided by Accel Academy to CAA continue. ECF No. 8-8. The arbitration hearing between the parties was held on February 20–21, 2020. ECF No. 8-11 at 2; ECF No. 11-1. The arbitrator found that CAA's termination of Accel Academy did not comply with the terms of the agreement because there was no credible threat to the health, welfare, or safety of the students and the contract was not terminated in a manner that was least disruptive to students. ECF

4

No. 8-11 at 3.  On March 16, 2020, the arbitrator awarded Accel Academy $859,142.41 in damages and ordered Accel Academy to remain at CAA through April 22, 2020.

Amid the arbitration between CAA and Accel Academy, Acceleration Education, Inc. ("Accel Education") submitted a Letter of Intent to form a charter school in South Carolina.  ECF No. 8-13.  Accel Education listed Accel Academy as its charter management organization in its Letter of Intent.  Id. at 2.  In December 2019, CAA alleges that Accel Academy attempted to solicit CAA's employees to work for Accel Academy.  ECF No. 8-15.  On or around February 11, 2020, Accel Education submitted its charter application for sponsorship by the SCPCSD.  ECF No. 8-14.  At the arbitration hearing between the parties on February 20–21, 2020, CAA questioned Accel Academy about the recruitment of CAA's employees to work for the new charter school Accel Academy was forming in South Carolina and alleged that this could jeopardize CAA's Charter Amendment Request.  ECF No. 11-1 at 42, 306, 381–86, 414, 425, 445.  On March 31, 2020, Accel Academy terminated the provision of certain software educational services which were necessary for CAA to operate due to the COVID-19 restrictions.  ECF No. 8-12.  On or around the same date, CAA alleges that Accel Academy attempted to solicit CAA employees in an effort to influence those employees to breach their employment contracts with CAA.  ECF No. 8 at 15.  On April 6, 2020, CAA filed a Motion for a Temporary Restraining Order and Preliminary Injunction in the Charleston County Court of Common Pleas ("State court") requesting that the State court order Accel Academy to reactivate and enable all software educational services through April 22, 2020.  ECF No. 1-4 at 15.  On April 9, 2020, and the State court granted CAA's motion for a Temporary Restraining Order and Preliminary Injunction and ordered Accel

Academy to restore the disabled services.  ECF No. 1-12.  On April 6, 2020, CAA filed a claim against Accel Academy in State court alleging tortious interference with contract ("State court claim").  ECF No. 1-4 at 14.  On April 17, 2020, the SCPCSD approved Accel Education's charter application.  At the April 17, 2020 hearing, CAA alleged that Accel Education made intentional misrepresentations about the operation of CAA and alleged that CAA intended to move locations without informing the SCPCSD Board.  ECF No. 8 at 17.  At that time, the SCPCSD Board had still not approved CAA's Charter Amendment Request.  ECF No. 21 at 5

On April 29, 2020, Accel Academy properly removed the State court claim to this court.  ECF No 1.  On May 6, 2020, Accel Academy filed a motion to dismiss for failure to state a claim, or, in the alternative, to transfer venue, or, in the alternative, to compel arbitration.  ECF No. 4.  On May 19, 2020, CAA amended its complaint.  ECF No. 8.  In the amended complaint, CAA added Accel Education as a defendant to its tortious interference with a contract claim.  Id. at 16.  The amended complaint also added an additional claim of intentional interference with prospective contractual relations against both Accel Academy and Accel Education.  Id. at 17–18.

On May 19, 2020, CAA filed a motion to remand and a motion to stay Accel Academy's motion to dismiss for failure to state a claim, or, in the alternative, to transfer venue, or, in the alternative, to compel arbitration.  ECF No. 9.  On June 2, 2020, Accel Academy filed a second motion to dismiss for failure to state a claim, or, in the alternative, to transfer venue, or, in the alternative, to compel arbitration.  ECF No. 11.  On June 2, 2020, Accel Academy responded to the motion to remand and motion to stay, ECF No. 12, to which CAA replied to on June 9, 2020, ECF No. 19.  On June 16, 2020,

CAA responded to Accel Academy's second motion to dismiss for failure to state a claim, or, in the alternative, to transfer venue, or, in the alternative, to compel arbitration, ECF No. 21, to which Accel Academy replied on June 23, 2020, ECF No. 22.  The motions have been fully briefed and are ripe for the court's review.

## II.  STANDARD

### A.  Motion to Remand

Federal courts possess constitutionally limited jurisdiction.  "The party seeking removal bears the burden of demonstrating that removal jurisdiction is proper," In re Blackwater Sec. Consulting, LLC, 460 F.3d 576, 583 (4th Cir. 2006), and all doubts regarding the propriety of removal are to be resolved in favor of retained state court jurisdiction, Baxley v. Advance Auto Parts, Inc., 2011 WL 586072 at *1 (D.S.C. Feb. 9, 2011) (citing Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)).  Removal raises significant federalism concerns, "[i]f federal jurisdiction is doubtful, a remand is necessary."  Mulcahey v. Columbia Organic Chemicals Co., 29 F.3d 148, 151 (4th Cir. 1994).

Generally, any civil action brought in a state court of which the district courts of the United States have original jurisdiction may be removed by the defendant to the district court of the United States for the district and division embracing the place where such action is pending.  28 U.S.C. § 1441(a).  Original jurisdiction exists where a claim arises from federal law, see 28 U.S.C. § 1331, or where the amount in controversy exceeds the sum or value of $75,000 and the claim is between citizen of different states, see 28 U.S.C. § 1332.  "If after removal the plaintiff seeks to join additional defendants

whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e).

### B.  Motion to Stay

"A court has the power to stay proceedings, which is 'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" Cty. of Charleston, S.C. v. Finish Line Found. II Inc., 2018 WL 3303197, at *2 (D.S.C. July 5, 2018) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)).  In exercising its authority to grant a discretionary stay, the court "must weigh competing interests and maintain an even balance." Landis, 299 U.S. at 254, 255 (citing Kansas City S. Ry. Co. v. United States, 282 U.S. 760, 763 (1931)).  Furthermore, "[t]he party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir. 1983).  When deciding on a motion to stay, a court considers four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Nken v. Holder, 556 U.S. 418, 426 (2009).

### C.  Motion to Dismiss for Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted."  When considering a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  E.I. du Pont de Nemours &

Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief." Id. at 679. Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Instead, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

### D.  Motion to Compel Arbitration

Section 4 of the Federal Arbitration Act ("FAA") provides in part that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. . . . [A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 23–24 (1983); Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 812 (4th Cir. 1989) (internal citations omitted). To that end, "the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." Peoples, 867 F.2d at 812 (citing United Steelworkers of Am. v. Warrior &

Gulf Navigation Co., 363 U.S. 574, 583 (1960)).  Thus, the court may not deny a party's request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id.

Despite these policies favoring arbitration, federal courts have the authority to evaluate the validity of arbitration agreements.  See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403–04 (1967) ("[A] federal court may consider only issues relating to the making and performance of the agreement to arbitrate.").  Section 2 of the FAA states that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4."  Rent—A—Center, West, Inc. v. Jackson, 561 U.S. 63, 71 (2010).  While federal law governs the arbitrability of disputes, state law governs issues regarding contract formation.  Am. Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005).  A court shall compel arbitration pursuant to the FAA if a party demonstrates:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute.

Id. (citing Adkins v. Labor Ready, Inc., 303 F.3d 496, 500–01 (4th Cir. 2002)).

## III.  DISCUSSION

### A.  Motion to Remand

The foundation of CAA's motion to remand is rooted in its amended complaint joining Accel Education as a defendant, which defeats diversity of citizenship and precludes the court from obtaining jurisdiction over this matter.  ECF No. 9-1 at 5.  Accel Academy contends that the court should exercise its discretion pursuant to 28 U.S.C. §1447(e) to deny the joinder of Accel Education, and by doing so, maintain diversity of citizenship and jurisdiction.  ECF No. 12 at 2.  28 U.S.C. § 1447(e) provides: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."  In Mayes v. Rapoport, the Fourth Circuit held that "a district court has the authority to reject a post-removal joinder that implicates 28 U.S.C. § 1447(e), even if the joinder was without leave of court."  198 F.3d 457, 462, n. 11 (4th Cir. 1999).  Here, CAA joined Accel Education post-removal and without leave of court. Compare ECF No. 1 (filed April 29, 2020) with ECF No. 8 (filed May 19, 2020).  The timing of CAA's joining of Accel Education falls directly within the scope of the court's authority pursuant to § 1447(e) and Mayes.

Although the doctrine of fraudulent joinder "does not directly apply after removal, . . . if the defendants can carry the heavy burden of proving fraudulent joinder, that fact should be a factor—and perhaps the dispositive factor—that the court considers in deciding whether a plaintiff may join a nondiverse defendant."  Mayes, 198 F.3d at 463. The decision whether to permit joinder under § 1447(e) "is not controlled by a Rule 19 analysis," which holds the court to a stringent standard, and instead "is committed to the

sound discretion of the district court." Mayes, 198 F.3d at 462 (citing 14C Charles A.

Wright, Arthur R. Miller, & Edward H. Cooper, Fed. Prac. & Proc. § 3739, at 445 (3d

ed.1998)).  The Mayes court enumerated how courts should proceed in analyzing whether

to permit joinder under § 1447(e):

> In exercising its discretion under Section 1447(e), the court [i]s entitled to
> consider all relevant factors, including: the extent to which the purpose of
> the amendment is to defeat federal jurisdiction, whether the plaintiff has
> been dilatory in asking for amendment, whether the plaintiff will be
> significantly injured if amendment is not allowed, and any other factors
> bearing on the equities.  The district court, with input from the parties,
> should balance the equities in deciding whether the plaintiff should be
> permitted to join a nondiverse defendant.

Mayes, 198 F.3d at 462–63 (citations and quotations omitted).  Because carrying the

heavy burden of proving fraudulent joinder can be the dispositive factor for the court

deciding whether a plaintiff may join a nondiverse defendant under § 1447(e), the court

will begin its analysis by first examining whether Accel Academy can meet the burden

necessary for the court to apply the doctrine of fraudulent joinder.  The court will then

proceed with its analysis under the factors established in Mayes.

### 1.  Doctrine of Fraudulent Joinder

Accel Academy argues that the court should disregard Accel Education as a sham

defendant under the fraudulent joinder doctrine because there is no possibility that CAA

could establish a cause of action against Accel Education.  The court agrees.  To show

that a plaintiff's joinder of a defendant is fraudulent, the removing party "must

demonstrate either outright fraud in the plaintiff's pleading of jurisdictional facts or that

there is no possibility that the plaintiff would be able to establish a cause of action against

the in-state defendant in state court."  Hartley v. CSX Transp., Inc., 187 F.3d 422, 424

(4th Cir. 1999) (citing Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993))

(internal quotation marks omitted).   Because Accel Academy has not alleged any

outright fraud in CAA's pleadings, the court focuses its inquiry solely on whether CAA

would be able to establish a cause of action against Accel Education in South Carolina.

"The party alleging fraudulent joinder bears a heavy burden—it must show that

the plaintiff cannot establish a claim even after resolving all issues of law and fact in the

plaintiff's favor." Id.  "This standard is even more favorable to the plaintiff than the

standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Id. (citing

Batoff v. State Farm Ins. Co., 977 F.2d 848, 852 (3d Cir. 1992)).  In determining whether

an attempted joinder is fraudulent, "the court is not bound by the allegations of the

pleadings but may instead consider the entire record and determine the basis of joinder by

any means available." Mayes, 198 F.3d 457 at 464 (quoting AIDS Counseling & Testing

Ctrs. v. Group W Television, Inc., 903 F.2d 1000, 1004 (4th Cir. 1990)) (internal

citations and quotation marks omitted).  Thus, to determine whether Accel Education is

fraudulently joined, the court must consider whether there is a possibility that CAA can

establish a cause of action against Accel Education under South Carolina law, resolving

all doubts in both fact and unsettled law in favor of CAA.

The first of two claims CAA brings against Accel Education is tortious

interference with contract.  ECF No. 8 at 16–17.  To establish a cause of action for

tortious interference with contract under South Carolina law, a plaintiff must

demonstrate: (1) existence of a valid contract; (2) the wrongdoer's knowledge thereof; (3)

the wrongdoer's intentional procurement of its breach; (4) the absence of justification;

and (5) resulting damages.  Eldeco, Inc. v. Charleston Cty. Sch. Dist., 642 S.E.2d 726,

731 (S.C. 2007).  Accel Academy contends that CAA cannot make a prima facia case for

tortious interference with contract against Accel Education because there have been no

damages alleged that are the result of the actions taken by Accel Education.  ECF No. 22

at 3.  The court agrees with Accel Academy.

Where there are no damages, the plaintiff cannot meet an essential element to the

cause of action for tortious interference with contract.  Eldeco, 642 S.E.2d at 731.  CAA

argues that statements made by Accel Education's Committee Chair Amy Mims, on

behalf of Accel Education, at the SCPCSD Board meeting on April 17, 2020

misrepresented that CAA intended to materially breach its Charter by changing locations

without informing the SCPCSD.  ECF No. 8 at 17.  CAA argues that it never intended to

change locations, which would result in a breach of its contract with SCPCSD, and

therefore, the misrepresentations by Accel Education damaged CAA by placing the

school at "great risk of having its Charter revoked by the SCPCSD or facing sanctions

short of revocation."  Id.  Even assuming these allegations as true and that the threat of

harm alone would be enough to satisfy the damages element for a tortious interference

with contract claim[1], CAA now admits there is no risk of having its Charter revoked by

---

[1]  Under South Carolina law, while a claim of tortious interference with contract "does
not require absolute certainty of proof upon which [damages] are to be estimated, it does
require such reasonable certainty that damages may not be based wholly upon speculation
and conjecture."  Collins Music Co. v. Ingram, 357 S.E.2d 484, 486 (S.C. Ct. App. 1987)
(citing South Carolina Finance Corp. of Anderson v. West Side Finance Co., 113 S.E.2d
329 (S.C. 1960)).  However, since CAA now admits it is not at risk of having its Charter
revoked by the SCPCSD or facing sanctions short of revocation, ECF No. 22-1 at 2–3,
the court need not determine if "great risk" of having its Charter revoked by the SCPCSD
or facing sanctions short of revocation "is purely speculative and cannot serve as a basis
for estimating damages" in a claim of tortious interference with contract under South
Carolina law.  Id.

the SCPCSD or facing sanctions short of revocation.  ECF No. 22-1 at 2–3; ECF No. 22-2.

On June 16, 2020, CAA filed a memorandum with the Western District of North Carolina in support of an emergency motion to stay writ of execution of judgment pending appeal ("June 16, 2020 WDNC brief").  ECF No. 22-1.  In the June 16, 2020 WDNC brief, CAA stated that its current Charter is in good standing with the SCPCSD Board, will continue to be in good standing through 2027, and that the SCPCSD Board has conditionally approved CAA's Charter Amendment Request.  ECF No. 22-1 at 2–3. The June 16, 2020 WDNC brief stated that, "CAA will have no issue completing the conditions" and that "CAA fully anticipates that its Charter Amendment Request will be finalized in August 2020."  Id. at 3.  The June 16, 2020 WDNC brief included a declaration from CAA's Board Chair, Nadine Deif ("Deif declaration"), in which Ms. Deif averred under penalty of perjury that SCPCSD Board conditionally approved CAA's Charter Amendment Request on June 11, 2020, CAA will have no issue completing the conditions, and that SCPCSD's counsel stated at the hearing that the recommendation will be that the Charter Amendment Request will be finalized at SCPCSD Board's August meeting "unless something dramatic changes."  ECF No. 22-2 at 2.  The June 16, 2020 WDNC brief specified that "CAA's Charter Amendment Request does not affect the term of its Charter with SCPCSD, which expires on June 30, 2027," and that CAA "will continue to operate as a public charter school serving the at-risk high school students in the Charleston, South Carolina area at least through June 30, 2027."  Id. at 3.

CAA argues that the Western District of North Carolina proceedings should have no bearing on this court's decision regarding whether it should allow joinder of Accel

15

Education and remand this matter to state court.  The court disagrees.  When considering whether an attempted joinder is fraudulent, "the court is not bound by the allegations of the pleadings but may instead consider the entire record and determine the basis of joinder by any means available."  Mayes, 198 F.3d 457 at 464.  Because Accel Academy has entered the June 16, 2020 WDNC brief and the Deif declaration into the record, it is appropriate for the court to consider those documents in determining if CAA's joinder of Accel Education is fraudulent.  The court finds that the CAA statements in the June 16, 2020 WDNC brief regarding their current charter and their Charter Amendment Request demonstrates that there is no risk of the CAA charter being revoked by the SCPCSD or facing sanctions short of revocation.  Because the only damages that CAA alleges was a result of Accel Education's actions in its tortious interference with contract claim was having its charter revoked by the SCPCSD or facing sanctions short of revocation by the SCPCSD, CAA cannot establish a claim of tortious interference with contract against Accel Education.

In short, the only damages CAA alleges in its tortious interference with contract claim against Accel Education was being at "great risk" for having their charter revoked by the SCPCSD or facing sanctions short of revocation by the SCPCSD.  CAA now admits that there is no threat of having its charter revoked by the SCPCSD or facing sanctions short of revocation by the SCPCSD as a result of Accel Education's actions. ECF No. 22-1 at 2–3; ECF No. 22-2.  Damages are a necessary element of a tortious interference with contract claim.  Having admitted there are not any facts necessary to prove damages, CAA has no possibility to establish a cause of action against Accel Education for tortious interference with contract.  Therefore, the court finds that CAA has

no possibility to establish a cause of action against Accel Education for tortious interference with contract.

The second of two claims CAA brings against Accel Education is intentional interference with prospective contractual relations.  ECF No. 8 at 17–18.  To establish a cause of action for intentional interference with prospective contractual relations in South Carolina, a plaintiff must show: (1) intentional interference with prospective contractual relations; (2) for an improper purpose or by improper methods; and (3) resulting in injury.  Eldeco, 642 S.E.2d at 732.  Accel Academy contends that CAA cannot make a prima facia case for intentional interference with prospective contractual relations against Accel Education because CAA has been granted conditional approval of its Charter Amendment Request by SCPCSD.  ECF No. 22 at 3.  The court again agrees with Accel Academy.

Where there is no loss of an identifiable contract or expectation, the plaintiff cannot meet an essential element to the cause of action for intentional interference with prospective contractual relations.  United Educ. Distributors, LLC v. Educ. Testing Serv., 564 S.E.2d 324, 328 (S.C. Ct. App. 2002).  As explained in more detail above, CAA has admitted that the SCPCSD Board conditionally approved CAA's Charter Amendment Request on June 11, 2020.  ECF No. 22-1 at 2–3; ECF No. 22-2.  This means CAA is not at risk of losing their contractual relationship with SCPCSD.  Because the only lost contract that CAA alleges in its intentional interference with prospective contractual relations claim against Accel Education was not receiving approval of CAA's Charter Amendment Request and because CAA did receive approval of its Charter Amendment

Request, CAA has no possibility of establishing a claim of tortious interference with contract against Accel Education under South Carolina law.

In short, the only contract CAA alleges was lost in its intentional interference with prospective contractual relations claim against Accel Education was its Charter Amendment Request. By CAA's own admission the SCPCSD Board has conditionally approved CAA's Charter Amendment Request. ECF No. 22-1 at 2–3; ECF No. 22-2. Losing a contract as a result of the wrongdoer's action is a necessary element of an intentional interference with prospective contractual relations claim. Having admitted there are not any facts which would show a loss of its contract, CAA has no possibility of establishing a cause of action against Accel Education for tortious interference with contract.

In sum, because CAA has no possibility of establishing a cause of action against Accel Education for either tortious interference with contract or intentional interference with prospective contractual relations, the court finds that the doctrine of fraudulent joinder applies to each claim CAA brings against Accel Education. Although the court's application of the doctrine of fraudulent joinder can be a dispositive factor in denial of post-removal joinder pursuant to § 1447(e), out of an abundance of caution the court proceeds with its analysis of the remaining Mayes factors to determine if the balance of equities weighs for or against joinder of Accel Education.

### 2. **Mayes** Factors

The factors established in Mayes also weigh in favor of disallowing Accel Education to be joined. The first Mayes factor examines whether the purpose of the proposed amendment is to defeat jurisdiction. Where "a plaintiff seeks to add a

nondiverse defendant immediately after removal but before any additional discovery has

taken place, district courts should be wary that the amendment sought is for the specific

purpose of avoiding federal jurisdiction." Mayes, 198 F.3d at 463. Additionally, where

"no attempt was made to add the nondiverse defendant until after removal . . . although

the relevant facts, as explained, were in the possession of the plaintiffs well before suit

was filed," courts have found that shows that the nondiverse defendant is being added to

defeat diversity. Newman v. Motorola, Inc., 218 F. Supp. 2d 783, 787 (D. Md. 2002).

On the other hand, when the nondiverse defendant is joined "based on newly discovered

information" courts have found that such joinders "are often sought for legitimate

purposes." Boykin v. Spectrum Lubricants Corp., 2014 WL 12631658, at *4 (D.S.C.

Mar. 7, 2014).

     Here, CAA contends that Accel Education was not named as a defendant in

CAA's original complaint because the "extent of [Accel Education]'s efforts . . . to

damage CAA's contractual and prospective contractual relationship with SCPCSD was

not apparent until April 17, 2020." ECF No. 9-1 at 5. The court acknowledges that CAA

learned additional information regarding further actions taken by Accel Education during

the April 17, 2020 Board meeting that it did not have when it filed the original complaint

in State court and that some of that information strengthened their claims against Accel

Education.[2] ECF No. 19 at 5. However, CAA raised numerous concerns regarding

---

[2] This information included CAA learning that Accel Education equated itself to Chick-fil-a while equating CAA to a lesser restaurant. See ECF No. 8 at 14 ("During AEA's charter application hearing, Ms. Mims insultingly and unprofessionally compared AEA to CAA by stating that AEA would be like a Chick-Fil-A next to a lesser restaurant."). The court sympathizes with CAA being aghast by Accel Education's caustic comparison. As honor-besmirching as that insult may be, "sympathy cannot justify sophistry." Hughes v. Boston Mutual Life Insurance Co., 26 F.3d 264, 268–69 (1st Cir. 1994). The knowledge

potential damage with its contract and prospective contract with the SCPCSD as a result

of Accel Education's actions during the February 20–21, 2020 arbitration hearing— some

two months prior to its filing of the original complaint.  ECF No. 11-1 at 42, 306, 381–

86, 414, 425, 445.  This demonstrates to the court that no attempt was made to add the

nondiverse defendant until after removal, although sufficient relevant facts were in the

possession of the CAA well before suit was filed.  Accordingly, the court finds that the

first Mayes factor weighs slightly against permitting joinder.

The third Mayes factor examines whether CAA will be significantly injured if the

amendment is not allowed.  CAA contends that "significant financial injury" will befall it

"if it must pursue separate legal actions against [defendants] related to the same matters

in two different judicial forums."  ECF No 9-1 at 6.  While the court acknowledges that

the time and expense of sustaining two separate lawsuits might be onerous to CAA, this

burden was created in part by CAA— by failing to initially name Accel Education as a

defendant.  The court is not persuaded that such a burden weighs in favor of joinder.  See

Boykin, 2014 WL 12631658, at *6 (finding that Plaintiff "will not be significantly

injured" where "burden is, at least in part, of Plaintiff's own making."); see also Smith v.

Computer Task Grp., Inc., 2007 WL 1447699, at *3 (M.D.N.C. May 10, 2007)

("Certainly, proceeding with similar trials in state court and federal court would be

expensive and time consuming . . . [h]owever, this potential dilemma was created solely

by [the plaintiff] . . . [as] [the plaintiff] was aware of the potential liability of the

---

CAA had regarding Accel Education's actions during the February 20–21, 2020
arbitration hearing reveals to the court that CAA had relevant facts in its possession
sufficient to identify Accel Education as a potential defendant well before this suit was
filed.  ECF No. 11-1 at 42, 306, 381–86, 414, 425, 445.

[defendants plaintiff seeks to join] at the time he filed the state court action and elected

not to name them as defendants.").

Furthermore, where complete relief can be obtained from the remaining

defendant, courts have found that the plaintiff is not at risk for significant injury.  Boykin,

2014 WL 12631658, at *6.  In this instance, there is no evidence that CAA cannot be

afforded complete relief by Accel Academy.  Indeed, Accel Academy is a for-profit

corporation with numerous locations across the country and Accel Education is a non-

profit organization that, based on CAA's own admissions, "will not be opening in

Charleston until the 2021-2022 academic year."  ECF No. 22-1.  This fact demonstrates

to the court that disqualifying Accel Education from joining this lawsuit would not place

CAA at a significant risk of not being able to recover in this action.  In short, the court

finds that CAA will not be significantly injured if joinder of Accel Education is not

allowed.  Accordingly, the court finds that the third Mayes factor weighs in favor of not

allowing Accel Education to be joined.

The fourth Mayes factor allows the court to consider any other factors bearing on

the equities.  In so doing, the court recognizes Accel Academy's interest in maintaining a

federal forum.  Mayes, 198 F.3d at 463 ("Careful scrutiny of attempts at post-removal,

non-diverse joinder protects the diverse defendant's 'interest in keeping the action in

federal court." (internal quotation omitted)).  Accel Academy properly removed this case

to this court and continues having a viable interest in litigating this case in a federal

forum.  See Taft v. Siegwerk USA Inc., 2011 WL 4459116, *4 (W.D.N.C. Sept. 26,

2011) ("[T]he Court is mindful of the diverse Defendants' interest in retaining the federal

forum."). Accordingly, the court finds that the fourth <u>Mayes</u> factor weighs in favor of not allowing Accel Education to be joined.

In sum, Accel Academy has met the heavy burden of proving the fraudulent joinder doctrine applies to CAA's claims against Accel Education. Furthermore, the court's balance of equities under the <u>Mayes</u> factors weighs against permitting Accel Education to be joined.[3] Therefore, the court exercises its discretion pursuant to § 1447(e) to deny the post-removal joinder of Accel Education and denies CAA's motion to remand.

**B. Motion to Stay**

CAA asks the court to stay Accel Academy's motion to dismiss or, in the alternative, to transfer venue or stay pending arbitration while CAA's motion to remand is pending. ECF No. 9-1 at 1, 3, 4, 7; ECF No. 19 at 1, 5, 7. CAA failed to make any substantive argument as to why the court should stay Accel Academy's motion to dismiss or, in the alternative, to transfer venue or stay pending arbitration. However, the court need not rule on the merits of CAA's motion to stay because the court has already ruled on CAA's motion to remand. Therefore, the court finds as moot CAA's motion to stay.

---

[3] The second <u>Mayes</u> factor examines whether the plaintiff has been dilatory in seeking the amendment. On the one hand, CAA properly amended their complaint without leave of court within the time frame allowed pursuant to Rule 15(a). On the other hand, CAA failed to originally include Accel Education as a defendant although sufficient relevant facts were in the possession of the CAA well before suit was filed. Because CAA was not dilatory in amending their complaint, but was dilatory in joining Accel Education, the court finds second <u>Mayes</u> factor favors neither allowance or denial of joinder. Because the other <u>Mayes</u> factors weigh in favor of denial of joinder of Accel Education, the court finds the balance of equities demonstrates that Accel Education should not be allowed to be joined in this instance.

### C. Motion to Dismiss

Accel Academy's first motion to dismiss was filed in response to CAA's original complaint.  ECF No. 4.  In response, CAA timely filed its amended complaint which added an intentional interference with prospective contractual relations claim against Accel Academy in addition to its claim of tortious interference with contract.  ECF No. 8. In the Fourth Circuit, it is well-established law that motions directed at superseded pleadings may be denied as moot.  Young v. City of Mount Ranier, 238 F.3d 567, 573 (4th Cir. 2001) ("The general rule . . . is that an amended pleading supersedes the original pleading, rendering the original pleading of no effect.").  Because Accel Academy's first motion to dismiss was filed in response to CAA's original, now superceded, complaint, the court finds as moot Accel Academy's motion to dismiss, ECF No. 4.

In their second motion to dismiss, Accel Academy contends that CAA failed to sufficiently allege facts to establish a breach of contract or damages in their claim of tortious interference with contract ("TIC"), and therefore, the court should grant the motion to dismiss the claim of tortious interference with contract.  ECF No. 11-3 at 1–2. CAA argues that its pleading sufficiently alleges tortious interference with contract on two different grounds: (1) Accel Academy's termination of certain software educational services caused CAA to breach its contract with the SCPCSD, which resulted in damages ("Services TIC"), and (2) Accel Academy's recruitment of CAA's current teachers caused the recruited teachers to breach their employment contracts with CAA, which resulted in damages ("Employment TIC").  ECF No. 21 at 3.

Additionally, Accel Academy contends that CAA's intentional interference with prospective contractual relations claim fails to sufficiently allege facts that establish a

contract was lost that would have been procured but for the interference of Accel

Academy, and therefore, the court should grant the motion to dismiss.  ECF No. 11-3 at

2.  In its response brief, CAA argues that its pleadings sufficiently allege an intentional

interference with prospective contractual relations claim and that Accel Academy acted

with malice and for the improper purpose of interfering with CAA's Charter Amendment

Request.  ECF No. 21 at 5.

　　　　Before beginning its substantive examination of Accel Academy's second motion

to dismiss, the court addresses the issue of the boundaries of factual considerations in a

motion to dismiss.  Accel Academy asks the court to consider the June 16, 2020 WDNC

brief and the Deif declaration in its motion to dismiss analysis.  ECF No. 22 at 3, n. 1.

Accel Academy's request is based upon the Fourth Circuit's opinion in Witthohn v. Fed.

Ins. Co.  164 F. App'x 395, 397 (4th Cir. 2006).  The court rejects CAA's request to

consider the June 16, 2020 WDNC brief and the Deif declaration in its motion to dismiss

analysis for several reasons.

　　　　First, Witthohn is an unpublished opinion, and unpublished opinions are not

binding precedent in the Fourth Circuit.  See Hogan v. Carter, 85 F.3d 1113, 1118 (4th

Cir. 1996); 4th Cir. R. 36(c).  Binding precedent on the issue holds that "a court is not to

consider matters outside the pleadings or resolve factual disputes when ruling on a

motion to dismiss."  Bosiger v. U.S. Airways, 510 F.3d 442, 450 (4th Cir. 2007).

Furthermore, Witthohn relies on Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir.

1999) to support the proposition that certain exceptions to the rule allow courts to

consider documents outside of the complaint in a motion to dismiss.  164 F. App'x at

397.  Phillips states an exception to the rule that courts may consider any documents

outside of the complaint in a motion to dismiss exists only when such documents "[are] integral to and explicitly relied on in the complaint." 190 F.3d 609 at 618. In Phillips, the court reviewed a newspaper article that was not attached to the complaint because the statement in the article was the basis for the claim brought by the plaintiff and the article was explicitly relied on in the complaint. Id. In this instance, while the information in the June 16, 2020 WDNC brief and the Deif declaration may be integral to CAA's amended complaint, those documents are not "specifically rely[ied] upon in" CAA's amended complaint. Therefore, the court finds that the June 16, 2020 WDNC brief and the Deif declaration do not meet any exception to the rule that courts may consider documents outside the complaint.

Having concluded that the court is constrained by precedent to consider only those documents attached to the pleadings and the amended complaint, the court will begin by examining the sufficiency tortious interference with contract claim, and then proceed with examining the sufficiency CAA's intentional interference with prospective contractual relations claim.

### 1. Services TIC

Accel Academy argues that the court should grant its motion to dismiss CAA's tortious interference with contract claim for three reasons. ECF No. 11-3 at 13–17. First, Accel Academy argues that the third element of a tortious interference with contract claim requires that the alleged wrongdoer cause a third person, and not the plaintiff, to breach the contract. Id. at 14 (quoting Threlkeld v. Christoph, 312 S.E.2d 14, 16 (S.C. Ct. App. 1984). Accel Academy contends because the Services TIC claim alleges that Accel Academy's actions caused CAA to breach its contract with SCPCSD, and not the

SCPCSD to breach its contract with CAA, the complaint is insufficiently alleged.  Id.

CAA argues that either party's breach of a contract is sufficient to satisfy the third

element of tortious interference with contract claim, and therefore, this element has been

sufficiently alleged.  ECF No. 19 at 2–3 (citing Bocook Outdoor Media, Inc. v. Summey

Outdoor Advert., Inc., 363 S.E.2d 390, 394 (S.C. Ct. App. 1987), overruled on other

grounds by O'Neal v. Bowles, 431 S.E.2d 555 (S.C. 1993)).  The court agrees with CAA.

Though both parties rely on opinions from the South Carolina Court of Appeals,

the court is persuaded by CAA's argument for two reasons.  First, although Bocook did

not overrule Threlkeld, it was decided after Threlkeld.  More importantly, in Threlkeld

the South Carolina Court of Appeals quoted the elements for tortious interference of a

contract under North Carolina law.  312 S.E.2d at 16 (quoting Childress v. Abeles, 240

N.C. 667, 84 S.E.2d 176, 181 (N.C. 1954)).  North Carolina law explicitly requires a

plaintiff to allege that "the defendant intentionally induc[ed] the third person not to

perform the contract" in order to establish a tortious interference of a contract claim.

Embree Constr. Grp., Inc. v. Rafcor, Inc., 411 S.E.2d 916, 924 (N.C. 1992) (emphasis

added).  Under South Carolina law, the plaintiff is required to only allege that a contract

between itself and a third party was breached, and not explicitly that the third party

breached the contract.  Eldeco, 642 S.E.2d at 731.  Because inducing the third person not

to perform the contract is not a necessary element of a tortious interference of a contract

claim under South Carolina law, the court finds that the wrongdoer's intentional

procurement of either party's breach of contract is sufficient to satisfy the third element

of a tortious interference of a contract claim.  Therefore, CAA's allegation that Accel

Academy caused CAA to breach its contract with the SCPCSD is properly pled with respect to the third element of a tortious interference of a contract claim.

Next, Accel Academy argues that its actions could not have caused a breach of CAA's contract with the SCPCSD because CAA was already in breach of its contract with the SCPCSD. ECF No 11-3 at 15. The SCPCSD clearly indicated that CAA's actions caused a breach of the contract as it related to the actions taken between October and November of 2019. ECF No. 8-7 at 4. However, the amended complaint alleges that the breach of contract based on CAA's October and November 2019 actions was cured by the injunctive relief granted on January 6, 2020 and Award of Arbitrator issued on March 16, 2020. ECF No. 8 at 8–9; ECF No. 8-8; ECF No. 8-11. Furthermore, the breach of contract of the Charter alleged by CAA in the amended complaint is not related to the actions taken by CAA between October and November of 2019. The breach of the Charter contract in the Services TIC is allegedly the result of actions taken by Accel Academy on or around March 31, 2020, after the previous breach had already been cured. ECF No. 8 at 8–9. Because the breach of contract based on CAA's October and November 2019 actions was cured prior to Accel Academy's purported actions that are alleged to have caused the breach of contract, the court finds that CAA properly plead the breach of contract element for the Services TIC claim in its amended complaint.

In short, CAA properly plead that Accel Academy caused it to breach its contract with the SCPCSD because inducing the third person to breach the contract is not a necessary element of a tortious interference of a contract claim under South Carolina law. CAA also sufficiently alleged that the previous breach of contract was cured prior to the alleged breach in the amended complaint. Therefore, the court finds that CAA has met

27

the pleading burden for the third element of the Services TIC claim in its amended complaint.

Finally, CAA alleges in the Services TIC claim that as a result of Accel Academy's termination of certain software educational services, CAA incurred damages because its students were unable to access their online learning platforms or curriculum and its teachers lost instructional time.  ECF No. 8 at 11.  Accel Academy argues that these damages alleged in the Services TIC claim are too speculative to meet the fifth element of a tortious interference with contract claim, damages.  ECF No. 11-3 at 15 (citing Collins Music Co., 357 S.E.2d at 486).  The court disagrees.

Under South Carolina law, while a claim of tortious interference with contract "does not require absolute certainty of proof upon which [damages] are to be estimated, it does require such reasonable certainty that damages may not be based wholly upon speculation and conjecture."  Collins Music Co., 357 S.E.2d at 486.  In this instance, the lost instructional time by CAA teachers and students alleged in Services TIC claim is neither speculative or conjectural.  This is damage that, as alleged, has already occurred.  ECF No. 8 at 11.  While CAA has not given an exact dollar amount of damages, the law in South Carolina only requires that the damages "not [be] purely speculative and [that] there exists a fairly accurate method to estimate the lost profits."  Vortex Sports & Entm't, Inc. v. Ware, 662 S.E.2d 444, 451 (S.C. Ct. App. 2008).  Here, the lost profits can be estimated by multiplying the number of hours of lost instructional time by the teachers as a result of Accel Academy's termination of certain software educational services by the hourly amount of compensation that CAA pays its teachers.  This method would give a fairly accurate estimate of the damages resulting from the number of hours

of lost instructional time by the teachers as a result of Accel Academy's termination of certain software educational services. The court finds that the damages purported by CAA in the Services TIC claim are sufficiently alleged, and therefore, the court finds that CAA has met the pleading burden for the fifth element of the Services TIC claim in its amended complaint.

In sum, the court finds that CAA sufficiently alleged the third and fifth elements of the Services TIC. Because Accel Academy does not dispute that the first, second, and fourth elements of the Services TIC claim are sufficiently alleged, the court finds that CAA has sufficiently pled the Services TIC claim. Therefore, the court denies Accel Academy's motion to dismiss with respect to the Services TIC claim.

### 2. Employment TIC

Accel Academy argues that the court should grant its motion to dismiss because CAA does not identify or allege any specific contracts that were breached in the Employment TIC claim, and therefore, the Employment TIC claim is insufficiently alleged. Id. at 15–16. The court agrees with Accel Academy. Where there is no breach, the plaintiff cannot meet an essential element to the cause of action for tortious interference with contract. Eldeco, 642 S.E.2d at 731. The amended complaint alleges that Accel Academy inquired about certain CAA teachers' interest in becoming employees of its company. ECF No. 8 at 15. The amended complaint also alleges that "some of CAA's employment agreement[s] include non-competition clauses, which state that "for a period of one (1) year thereafter [the term of the Agreement], Employee will not, directly or indirectly: Compete against CAA by independently or with others engaging in the sale of provision of services similar to or identical to those offered by

CAA to third parties." Id. at 16.  However, the amended complaint does not allege that

any employee breached their employment contract with CAA as a result of Accel

Academy's actions in the Employment TIC claim.  In fact, the amended complaint does

not even allege that Accel Academy offered employment to any individual employee who

would be breaching their employment agreement with CAA if that person took a job with

Accel Academy.  Because CAA's amended complaint fails to allege a breach of contract

as a result of Accel Academy's actions in the Employment TIC claim, the court grants

Accel Academy's motion to dismiss as it relates to the Employment TIC claim.

### 3.  Intentional Interference with Prospective Contractual Relations Claim

CAA contends that "by deactivating CAA's curriculum, phone, and email systems

. . . all while CAA's Charter Amendment Request was pending with the SCPCSD, an

inference can be made that Accel Academy's conduct was with malice and for the

improper purpose of interfering with CAA's Charter Amendment Request."  ECF No. 21

at 5.  CAA claims that this allegation is sufficient to survive a motion to dismiss its

intentional interference with prospective contractual relations claim.  Id.  Accel Academy

argues that because CAA cannot demonstrate that the SCPCSD granting CAA's Charter

Amendment Request was a "close certainty", the court should dismiss CAA's intentional

interference with prospective contractual relations claim.  ECF No 11-3 at 17–18.  The

court agrees with Accel Academy.

To establish a cause of action for intentional interference with prospective

contractual relations, a plaintiff must allege: (1) intentional interference with prospective

contractual relations; (2) for an improper purpose or by improper methods; and (3)

resulting in injury.  Eldeco, 642 S.E.2d at 732.  Under South Carolina law, for the first

element of an intentional interference with prospective contractual relations claim to

survive a motion to dismiss "the [prospective] agreement must be a close certainty . . . the

mere hope of a contract is insufficient." United Educ. Distributors, 564 S.E.2d at 330

(S.C. Ct. App. 2002).

In a letter sent to CAA on December 5, 2019, the SCPCSD explicitly told CAA

the following regarding its Charter Amendment Request:

> Finally, I want to be exceedingly clear on this point. There is no guarantee
> at all that the SCPCSD will approve the new plan that the CAA Board
> submits. The SCPCSD Board has never approved the CAA Board to locally
> manage the school without a management organization, and it is the CAA
> Board's burden to prove to the SCPCSD Board that it should be entrusted
> to do so. Many questions remain about the program CAA's Board is
> proposing to implement. The SCPCSD Board will carefully consider that
> program prior to allowing an amendment to implement a program that might
> be materially different than what was originally approved.

ECF No. 8-7 at 4–6 (emphasis added). It is clear from SCPCSD's December 5, 2019

letter to CAA that the Charter Amendment Request was far from being a "close

certainty" and, at best, receiving the Charter Amendment Request from the SCPCSD was

a "mere hope." Because SCPCSD's December 5, 2019 letter to CAA proves that CAA

receiving the Charter Amendment Request from CAA was not a "close certainty" and

"mere hope of a contract is insufficient" to satisfy the first element of an intentional

interference with prospective contractual relations claim, the court finds that CAA did not

sufficiently plead its intentional interference with prospective contractual relations claim.

Therefore, the court grants Accel Academy's motion to dismiss CAA's intentional

interference with prospective contractual relations claim.

### D. Motion to Transfer Venue/Motion to Compel Arbitration

Having denied Accel Academy's motion to dismiss the Services TIC claim, the court now must determine whether the court should transfer that claim so that arbitration may be compelled. Accel Academy contends that because it has a valid contract with CAA, which contains a mandatory arbitration clause requiring all disputes between the parties be arbitrated in Charlotte, North Carolina, the court should transfer this case to the United States District Court for the Western District of North Carolina so that arbitration may be compelled. ECF No 11-3 at 18–25. CAA argues that because this action was removed to federal court pursuant to 28 U.S.C. § 1441(a), and the current venue is proper, the court should decline to transfer this matter pursuant 28 U.S.C. § 1404(a). ECF No. 21 at 8. CAA asserts that Accel Academy has not met its burden to demonstrate that transfer is appropriate and that the existence of a forum-selection clause does not outweigh the hardships that would be caused by a transfer. Id. at 10. Additionally, CAA argues that this dispute is outside the scope of its agreement with Accel Academy, and therefore, is outside the scope of the arbitration clause within that agreement. Id. at 7–8. Furthermore, CAA argues that the court lacks the authority to compel arbitration in the Western District of North Carolina. Id. at 6–7. The court begins its analysis by examining the court's authority to transfer a case post-removal.

### 1. Authority to Transfer a Properly Removed Dispute

Initially, CAA argues that when an action is removed from state court to federal court, venue is exclusively governed by § 1441(a). ECF No. 21 at 8. Later, CAA appears to abandon that argument by stating that "a district court has great discretion

when determining whether to transfer a case under §1404(a)."[4] Id. at 9.  To the extent

that CAA is arguing that the court does not have the authority to transfer a removed case,

the court rejects that argument.  It is well-established that a federal court has the

discretion pursuant to § 1441(a) to transfer a dispute after it has been removed when a

mandatory forum-selection clause requires the action be brought in a different federal

court.  See Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 665 (1953) (holding that

§ 1441(a) controls venue in a removed action); see also Varnadore v. Nationwide Mut.

Ins. Co., 2013 WL 4504770, at *5 (D.S.C. Aug. 22, 2013) ("[A] removed action may not

be dismissed for improper venue based on a forum-selection clause because venue in a

removed action is governed solely by 28 U.S.C. § 1441(a) . . . [however,] transfer

remains available under 28 U.S.C. § 1404(a)."); Am. Ins. Mktg. Corp. v. 5 Star Life Ins.

Co., 958 F. Supp. 2d 609, 613, n. 5 (D. Md. 2013) ("Where the defendant argues that a

forum-selection clause requires the action to be brought in a different federal court, it

may still seek a post-removal discretionary transfer pursuant to § 1404(a)."); Palmetto

---

[4]  The court notes that although CAA does not explicitly argue that Accel Academy
should have made their argument for change in venue as motion to dismiss for improper
venue under Rule 12(b)(3), CAA does present the court with an analysis of a motion to
dismiss for improper venue under Rule 12(b)(3).  The court assumes that CAA brought to
its attention that "district courts in the Fourth Circuit have denied motions to dismiss for
improper venue, even where the motion was premised on a contractual forum-selection
clause, after a case has been removed to federal court in accordance with §1441(a)" and
"on at least one occasion, the Fourth Circuit has held that a defendant's attempt to
enforce a forum-selection clause is properly treated as an improper venue defense" in an
attempt to convince the court that it does not have the ability to transfer a case post-
removal.  ECF No. 21 at 8.  The Supreme Court in Atlantic Marine Construction Co. v.
U.S. District Court, unambiguously held that "Rule 12(b)(3) [is] not [a] proper
mechanism[ ] to enforce a forum-selection clause," and that "§ 1404(a) ... provide[s] [the]
appropriate enforcement mechanism."  571 U.S. 49, 61 (2013).  However, the court need
not address this issue because Accel Academy did not file a motion to dismiss for
improper venue under Rule 12(b)(3).

Bank v. BankFirst, 2009 WL 212417, at *1 (D.S.C. Jan. 28, 2009) ("After a defendant removes a case, he may not argue the venue is inappropriate [based on a forum selection clause].  However, he may argue, and the court may address a transfer pursuant to 28 U.S.C. § 1404(a).").  Having established that the court may authorize a post-removal transfer, the court now turns its attention to the appropriate application of its discretion pursuant to § 1404(a).

CAA contends that because Accel Academy filed the motion to transfer pursuant to § 1404(a), Accel Academy has the burden to demonstrate that transfer of venue is appropriate.  ECF No. 21 at 9.  Accel Academy argues that the existence of a valid contract with CAA that contains a mandatory arbitration clause requiring all disputes between the parties be arbitrated in Charlotte, North Carolina controls the court's analysis, and is sufficient to require transfer under § 1404(a).  ECF No. 11-3 at 20.  The party possessing the burden to demonstrate that transfer is appropriate under § 1404(a) was squarely addressed by the Supreme Court in Atlantic Marine, which was subsequently adopted by the Fourth Circuit in BAE Systems Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin., 884 F.3d 463 (4th Cir.), as amended (Mar. 27, 2018), cert. denied sub nom. Republic of Korea's Def. Acquisition Program Admin. v. BAE Sys. Sol. & Servs., Inc., 139 S. Ct. 209 (2018).

In the typical case, the defendant seeking transfer of venue under § 1404(a) "bears a heavy burden in opposing the plaintiff's chosen forum."  BAE Systems, 884 F.3d at 471 (internal quotation omitted).  Specifically, the defendant "must prove that an alternative forum is available, adequate, and more convenient (in light of the public and private interests involved) than the forum selected by the plaintiff."  Id.  The Atlantic

<u>Marine</u> court explained that, "[t]he calculus changes, however, when the parties' contract contains a valid forum-selection clause."  571 U.S. at 63.  When the parties' agreement contains a valid, mandatory forum-selection clause, the typical analysis of whether transfer of venue is appropriate under § 1404(a) converts in the following way:

> [T]he plaintiff's choice of forum merits no weight.  Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. . . . Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests.  When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. . . . As a consequence, a district court may consider arguments about public-interest factors only.  Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases.  Although it is "conceivable in a particular case" that the district court "would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause," such cases will not be common.

<u>Id.</u> at 63–64 (internal citations omitted).  The Fourth Circuit summarized <u>Atlantic Marine</u>'s changed calculus when a motion to transfer pursuant § 1404(a) is subject to a valid, mandatory forum-selection clause as "instead of heavily favoring the plaintiff's chosen forum and placing the burden on the defendant, the forum-selection clause is given controlling weight in all but the most exceptional cases," and the plaintiff bears the burden of proving why it should not be enforced.  <u>BAE Systems</u>, 884 F.3d at 471 (quoting <u>Atlantic Marine</u>, 571 U.S. at 63).

Here, the parties dispute whether the remaining claim in this instance is subject to the arbitration clause and whether the forum-selection clause within the arbitration clause is mandatory.  <u>Compare</u> ECF No. 11-3 at 20 ("[T]he inclusion of a mandatory forum-selection clause in Section 15 of the Contract mandates transfer to the United States

District Court for the Western District of North Carolina.") <u>with</u> ECF No. 21 at 8 ("[T]he alleged 'mandatory forum selection clause' contained in A[ccel] A[cademy]'s Agreement with CAA.").  Therefore, the court must determine if CAA's remaining claim against Accel Academy is covered by the forum-selection clause in the agreement between the two parties, and if so, resolve whether that forum-selection clause is mandatory or permissive before it can proceed with its §1404(a) analysis.

### 2.   Scope of the Arbitration Clause

The court must next determine whether the scope of the arbitration clause encompasses the remaining claim, the Services TIC.  CAA contends that its claim "focus[es] on the intentional misconduct by A[ccel] A[cademy] to interfere with its relationship with SCPCSD, which is wholly outside the scope of [its] agreement [with Accel Academy]."  ECF No. 21 at 7–8.  Accel Academy argues that its agreement with CAA contains a broadly worded arbitration clause and because this dispute has a "significant relationship to the contract," the claim is within the scope of the arbitration clause.  ECF No. 11-3 at 23.  The court finds that the Services TIC claim is within the scope of the arbitration clause.

The Fourth Circuit has "consistently held that an arbitration clause encompassing all disputes 'arising out of or relating to' a contract embraces 'every dispute between the parties having a significant relationship to the contract regardless of the label attached to a dispute.'"  <u>Wachovia Bank, Nat. Ass'n v. Schmidt</u>, 445 F.3d 762, 767 (4th Cir. 2006) (quoting <u>Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.</u>, 96 F.3d 88, 93 (4th Cir.1996)).  Here, the relevant language of the arbitration clause in the agreement between CAA and Accel Academy is as follows:

> In the event of a dispute between the Parties[,] [CAA] and Accel[ ] Academ[y][,] agree to enter into negotiation to attempt to resolve any dispute. . . . If negotiations are unsuccessful, and upon the request of either Party, the Parties shall enter into alternative dispute resolution consisting of arbitration.

ECF No. 8-3 at 16. The language used in the arbitration clause in the agreement between CAA and Accel Academy places no conditions on the claims needing to arise from the contract. By using of the phrase "any dispute," the arbitration clause in the agreement between CAA and Accel Academy encompasses an even broader range of claims than the Fourth Circuit's "arising out of or relating to" standard, and therefore, would need to meet a lower burden than a "significant relationship to the contract" to be within the scope of the arbitration clause in the agreement between CAA and Accel Academy. However, the court need not make such a determination, because the court finds that the Services TIC claim does meet the "significant relationship to the contract" standard.

In order to ascertain if a significant relationship exists between the Services TIC claim and the agreement between CAA and Accel Academy, the court "must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause." J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 319 (4th Cir. 1988). As such, the court will examine the remaining claims to determine which, if any, fall within the scope of an arbitration clause. See, e.g., Stone v. Wells Fargo Bank, N.A., 361 F. Supp. 3d 539, 556 (D. Md. 2019); Montgomery v. Credit One Bank, NA, 848 F. Supp. 2d 601, 607 (S.D.W. Va. 2012). In the Services TIC claim, CAA alleges that Accel Academy caused it to breach its contract with the SCPCSD by discontinuing certain services that were Accel Academy's "responsibilit[y] under [its] [a]greement" with CAA. ECF No. 8 at 10. For CAA to suggest that the Services TIC is

"wholly outside the scope of [its] agreement [with Accel Academy]", ECF No. 21 at 8, is laughable.  Accel Academy would not have been providing these services to CAA but for the agreement between the two parties. The court finds that there is a significant relationship between the remaining Services TIC claim and the agreement between CAA and Accel Academy, and therefore, the court finds that the Services TIC falls within the scope of the arbitration clause of that agreement.

Having determined that the Services TIC claim falls within the scope of the arbitration clause of the agreement between CAA and Accel Academy, the court must now determine whether the language in the forum-selection clause within the arbitration clause is mandatory or permissive before it can proceed with its § 1404(a) analysis.

### 3.  Mandatory Forum-Selection Clause

The court must now determine if the forum-selection clause within the arbitration clause is mandatory or permissive so it can conclude which methodology is appropriate when conducting its § 1404(a) analysis.  CAA argues that a party may not seek to enforce a forum-selection clause when the case has been brought in an appropriate venue, and that the District of South Carolina is an appropriate venue because this action was properly removed by Accel Academy pursuant to § 1441(a).  ECF No. 21 at 8.  Accel Academy contends that the language in the forum-selection clause within the arbitration clause is mandatory, and therefore, the court should transfer this dispute to the Western District of North Carolina to compel arbitration.  ECF No. 11-3 at 20.  The court finds the forum-selection clause within the arbitration clause to be mandatory.

Generally, courts enforce forum-selection clauses unless doing so would be unreasonable.  See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972).  This

presumption of enforceability applies only if the forum-selection clause is mandatory rather than permissive.  See Albemarle Corp. v. AstraZeneca UK Ltd., 628 F.3d 643, 650–51 (4th Cir. 2010).  "A mandatory clause requires litigation to occur in a specified forum; a permissive clause permits litigation to occur in a specified forum but does not bar litigation elsewhere." BAE Systems, 884 F.3d at 470.  "[W]here venue is specified with mandatory or obligatory language, the [forum-selection] clause will be enforced; where only jurisdiction is specified, the [forum-selection] clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive." Id. at 473, n. 7 (internal quotation omitted).

Here, the arbitration cause mandates that "[i]f an AAA filing site cannot be agreed upon, the filing site shall be Charlotte, North Carolina."  ECF No. 8-3 at 16.  This language does not just confer the jurisdiction of the arbitration; it explicitly obliges the arbitration to be filed in a specific venue.  The court interprets this to be a mandatory clause, as it requires arbitration to take place in Charlotte, North Carolina.  CAA argues that a party may not seek to enforce a forum-selection clause when the case has been brought in an appropriate venue, and that the District of South Carolina is an appropriate venue because this action was properly removed by Accel Academy pursuant to § 1441(a).  ECF No. 21 at 8.  The court is unconvinced by this argument.  As the court has previously held in a similar dispute, "[T]he fact that South Carolina may be [a] proper venue has no bearing on whether or not the court should enforce [a] forum[-]selection clause contained in [an] [a]rbitration [c]lause." Kiawah Island Util., Inc. v. Westport Ins. Corp., 2019 WL 5394200, at *6 (D.S.C. Oct. 22, 2019).

Having found that the Services TIC claim is subject to the arbitration clause of the agreement between CAA and Accel Academy and that the forum-selection clause within the arbitration clause is mandatory, the court will now turn back to its analysis under § 1404(a).

### 4.   § 1404(a) Changed Calculus

Because the court has found that the Services TIC claim is governed by a valid, mandatory forum-selection clause, the court must follow the "changed calculus" methodology prescribed in Atlantic Marine to evaluate the motion to transfer.  571 U.S. at 63.  This requires the court to give the forum-selection clause "'controlling weight in all but the most exceptional cases,' and the plaintiff bears the burden of proving why it should not be enforced."  BAE Systems, 884 F.3d at 471 (quoting Atlantic Marine, 571 U.S. at 63).  As above, the court has already rejected CAA's previous arguments for not enforcing the forum-selection clause.  CAA additionally contends that the court should not transfer this case because "transferring this matter to North Carolina would inconvenience every party and every witness."  ECF No. 21 at 10 (emphasis in original).  However, under the Atlantic Marine "changed calculus" methodology, "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."  571 U.S. at 64.  As such, CAA has waived the right to present that argument to the court.

The only remaining argument that CAA constructs that the court could construe as supporting the contention that transfer is inappropriate is that the court lacks the authority to compel arbitration in the Western District of North Carolina.  ECF No. 21 at

6–7.  While the court agrees with this argument, it does not weigh in favor of the court

denying transfer.  The court cannot compel the parties to arbitrate in North Carolina

because only courts in the jurisdiction where arbitration is required can compel the

parties to arbitration.  See, e.g., Elox Corp. v. Colt Indus., Inc., 952 F.2d 395 (4th Cir.

1991) (unpublished) ("The district court must [ ] apply a forum-selection clause

contained in the agreement if such a clause exists . . . [and] if a court orders arbitration,

the arbitration must be held in the same district as the court"); Developers Sur. & Indem.

Co. v. Carothers Constr., Inc., 2017 WL 3054646, at *1 (D.S.C. July 18, 2017) ("Where a

valid arbitration agreement covering the issues in a case exists but the agreement

specifies an arbitral venue outside the district, transfer is the appropriate remedy, because

if the forum-selection clause is mandatory, then, the interest of justice would weigh

toward transfer."); Am. Int'l Specialty Lines Ins. Co. v. A.T. Massey Coal Co., 628 F.

Supp. 2d 674, 683 (E.D. Va. 2009) (finding that although the Fourth Circuit has not ruled

directly on whether a district court may compel arbitration outside of its geographic

jurisdiction, "the majority view holds that, where the parties have agreed to arbitrate in a

particular forum, only a district court in that forum has the authority to compel arbitration

under § 4 of the FAA").  This is consistent with the language of § 4 of the FAA, which

provides that "[t]he [arbitral] hearing and proceedings, under such agreement, shall be

within the district in which the petition for an order directing such arbitration is filed."

However, courts resolve this issue by using their discretionary powers under 28 U.S.C.

§ 1404(a) to transfer disputes subject to arbitration to the district court in the location

where arbitration is mandated.  Mitchell v. Craftworks Restaurants & Breweries, 2018

WL 5297815, at *12 (D.D.C. Oct. 25, 2018); Arctic Glacier U.S.A., Inc., 2017 WL

2629043, at *8.  In short, the court's lack of the authority to compel arbitration in the Western District of North Carolina further supports the court using its discretionary powers under § 1404(a) to transfer this dispute to the district court in the location where arbitration is mandated.

In sum, the Services TIC claim is governed by a valid, mandatory forum-selection clause.  That forum-selection clause has controlling weight in the court's § 1404(a) analysis and the burden shifts to CAA to convince the court that it should not exercise its discretion under § 1404(a) to transfer this dispute.  The arguments CAA offers to convince the court that it should not exercise its discretion under § 1404(a) were either rejected by the court in the Section III.D.2–3, previously waived by CAA as a result of the valid, mandatory forum-selection clause, or weigh in favor of the court transferring this dispute.  As a result, CAA has failed to carry its burden.  Therefore, the court finds that it is appropriate to exercise its discretionary powers under § 1404(a) to transfer this dispute to Western District of North Carolina.  Because Charlotte is in the Western District of North Carolina and the arbitration clause of the agreement between CAA and Accel Academy mandates arbitration in Charlotte, North Carolina, the courts finds that this is the proper venue for a transfer.[5]  As such, the court grants Accel Academy's motion to transfer and transfers CAA's remaining claim against the Accel Academy to the Western District of North Carolina to compel arbitration.

---

[5]  Although the Western District of North Carolina may be Ithaca in this epic procedural voyage, like Homer, the court finds its merit in the journey.  See Homer, The Odessey at bk. XXIV (800 B.C.) (trans. Samuel Butler), available at http://classics.mit.edu/Homer/odyssey.24.i.html.

### IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** CAA's motion to remand,

**FINDS AS MOOT** CAA's motion to stay, **FINDS AS MOOT** Accel Academy's motion

to dismiss, **GRANTS IN PART** and **DENIES IN PART** Accel Academy's motion to

dismiss, **GRANTS** Accel Academy's motion to transfer venue, and **TRANSFERS** the

case to the Western District of North Carolina to compel arbitration.

**AND IT IS SO ORDERED.**

**DAVID C.  NORTON**
**UNITED STATES DISTRICT JUDGE**

**July 16, 2020**
**Charleston, South Carolina**